Roy E. GERBER, Respondent,

v.

Phyllis EASTMAN, Appellant.

No. A03–811.

Court of Appeals of Minnesota.

Jan. 20, 2004.

Amber Ahola, Anishinabe Legal Services, Inc., Red Lake, MN, for appellant.

Ronald S. Cayko, Fuller, Wallner, Cayko & Pederson, Ltd., Bemidji, MN, for respondent.

Considered and decided by SCHUMACHER, Presiding Judge; RANDALL, Judge; and SHUMAKER, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

On appeal in this custody dispute between appellant-Indian-custodialgrandmother and respondent-non-Indian-father, grandmother challenges the district court's determinations that (1) the Indian Child Welfare Act does not apply where a non-Indian father seeks permanent custody of his biological child; (2) the district court has continuing, exclusive jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act where the district court initially granted custody to grandmother; and (3) the child's mother is not an indispensable party who must be joined in this proceeding.

## FACTS

The parties do not dispute the underlying facts in this case, which arise out of a proceeding in state district court for a child in need of protective services (CHIPS). The minor child, I.E., was born in 1999 to Joy Eastman, an Indian member of the Red Lake Band of Chippewa Indians, and respondent Roy Gerber, a non-Indian. I.E. lived with her mother when she was born, but was placed in foster care in February 2000 because of Joy Eastman's mental illness and her inability to care for the child. After reunification efforts failed, the county placed I.E., in September 2000, with her maternal grandmother, appellant Phyllis Eastman, who is a member of the Red Lake Band of Chippewa Indians and who lives on the reservation. Joy Eastman now resides in a traumatic brain injury group home in Duluth.

After I.E. was placed in foster care, the county contacted respondent, who first became involved in I.E.'s life in March 2001. On appellant's motion in state district court for permanent custody of I.E., the court, in July 2001, granted permanent sole legal and physical custody of I.E., an Indian child, to appellant.

In March 2003, respondent filed a motion in district court for a modification of custody, seeking sole legal and physical custody of I.E. The court granted respondent an evidentiary hearing, at which appellant did not appear, and granted respondent some parenting time with I.E. Appellant did not allow respondent to exercise his parenting time, and the police on

the reservation declined to enforce the district court's order. Ultimately, the county sheriff's office assisted respondent in obtaining I.E. one time during his specified parenting time when appellant took I.E. off of the reservation.

The Red Lake Tribal Court issued an order noting that appellant had custody under the district court's July 2003 order and recognizing the permanent custody placement, stating that the order had been entered when I.E. was living outside of the reservation. But the tribal court then determined that it had current exclusive jurisdiction over all present and future issues relating to I.E.'s custody, care, and visitation because the child has been living on the reservation with her grandmother since September 2000.

The state district court determined that the Federal Indian Child Welfare Act (ICWA) does not apply where a non-Indian biological father seeks custody of his own child and the state district court exercised continuing exclusive jurisdiction under Minnesota's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Appellant now challenges the district court's determination that the ICWA does not apply and the court's exercise of exclusive continuing jurisdiction.

## ISSUES

1. Does the federal Indian Child Welfare Act apply when a non-Indian father seeks permanent sole legal and physical custody of his biological child after the state district court has granted permanent sole legal and physical custody to the child's Indian maternal grandmother who resides with the child on the reservation?

2. Did the district court err in determining that it had continuing, exclusive jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act?

3. Is the biological mother of the minor child an indispensable party who must be joined in this action, where the mother has no custodial or parenting time rights as a result of her mental illness and possible traumatic brain injury?

## ANALYSIS

A reviewing court is not bound by and need not defer to a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Jurisdiction is a legal issue, which this court reviews de novo. *Podvin v. Jamar Co.*, 655 N.W.2d 645, 648 (Minn.App.2003) Interpretation of a statute is also a legal question, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

### I

Appellant first argues that this case involves a child custody proceeding and, therefore, the federal Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901–1963 (2002), applies and vests jurisdiction in the tribal court.

Congress enacted the ICWA in 1978, 25 U.S.C. § 1901, because of a growing concern that Indian children were being placed in non-Indian foster and adoptive homes, which deprived them of their unique culture. *Sayers by Sayers v. Beltrami County*, 481 N.W.2d 547, 549–50 (Minn.1992). Congress intended that the ICWA recognize the tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 35–36, 109 S.Ct. 1597, 1601, 104 L.Ed.2d 29 (1989). The purpose of the ICWA is to protect the best interests of Indian children and to preserve stability of the Indian tribe and family by preventing adoption

of Indian children by non-Indians where placement in an Indian family is possible. *Desjarlait v. Desjarlait*, 379 N.W.2d 139, 144 (Minn.App.1985), *review denied* (Minn. Jan. 31, 1986).

To determine whether the ICWA applies, it must first be established that the Indian child is the subject of a "child custody proceeding," as that term is defined in the ICWA. *In re Welfare of S.N.R.*, 617 N.W.2d 77, 80 (Minn.App.2000), *review denied* (Minn. Nov. 15, 2000). Under the ICWA, a child custody proceeding is limited to foster-care placement, termination of parental rights, pre-adoptive placement, and adoptive placement. 25 U.S.C. § 1903(1) (2002).

In this case, appellant argues that the proceeding involves a foster-care placement, which the ICWA defines as

> any action removing an Indian child from its parent or *Indian custodian* for temporary placement in a foster home or institution or the home of a *guardian or conservator* where the parent or *Indian custodian cannot have the child returned upon demand*, but where parental rights have not been terminated.

*Id.* (emphasis added). Under this definition, appellant contends that this case involves a child custody proceeding because, by having permanent custody of I.E., she is an Indian custodian under the ICWA and cannot have I.E. returned to her upon demand if respondent is granted permanent custody.

Appellant relies primarily on the Minnesota case of *In re Custody of A.K.H.*, 502 N.W.2d 790 (Minn.App.1993), *review denied* (Minn. Aug. 24, 1993), for the proposition that the ICWA applies to this intra-family custody proceeding. In *A.K.H.*, we held that the ICWA does not explicitly exclude intra-family custody disputes and, therefore, a child's Indian tribe had a statutory right to intervene in a custody pro-

ceeding between the parents and a grandparent. *Id.* at 791. In so holding, we outlined the four prongs of the ICWA that define foster-care placement:

> (1) removing the Indian child from the child's parent or Indian custodian; (2) temporarily placing the child in a "foster home or institution or the home of a guardian or conservator" where; (3) the parent or Indian custodian cannot have the child returned upon demand; and (4) parental rights have not been terminated.

*Id.* at 792. We determined that the first, third, and fourth prongs had been met, and then analyzed the second prong to determine whether the grandmother could be considered a guardian or conservator. *Id.*

In *A.K.H.*, all of the parties were enrolled members of an Indian tribe and the minor child had resided with her maternal grandmother for most of her life. *Id.* We determined that, under the ICWA, the grandmother's home must be considered the home of a guardian or conservator. *Id.* at 793. Therefore, because the four prongs defining foster-care placement were met, *A.K.H.* involved a child custody proceeding as defined in the ICWA. *Id.* Only after determining that *A.K.H.* involved a child custody proceeding did we broadly state that the ICWA applies to an intra-family custody dispute where all interested parties are enrolled members of an Indian tribe. *Id.*

In this case, the ICWA does not apply because, unlike *A.K.H.*, there is no "child custody proceeding," as that term is defined in the ICWA. This case does not involve "a temporary placement in a foster home or institution or the home of a guardian or conservator." *See* 25 U.S.C. § 1903(1) (2002) (defining "foster-care placement"). The placement here would

be to return the child to the custody of her parent and not to place her temporarily into a "foster home or institution or the home of a guardian or conservator," as defined in the ICWA. *See id.*

■ We also decline to adopt appellant's assertion that our holding in *A.K.H.* should apply to all intra-family disputes, even if the biological parent is seeking custody. A parent is considered a natural guardian. *See Illinois Farmers Ins. Co. v. Reed,* 662 N.W.2d 529, 530 (Minn.2003). However, the term "natural guardian" does not appear in the ICWA, and the plain language of the statute indicates that the ICWA does not apply where a parent is seeking to regain custody. The ICWA section that defines foster-care placement uses the term "parent" twice, but not in reference to a temporary placement in a foster home, institution, or home of a guardian or conservator. And, in considering Congress's policy reason for enacting the ICWA, that Indian children placed for adoption be placed with Indian families to preserve the Indian tribe and family, we cannot conclude that the ICWA was enacted to apply to a case where a non-Indian biological "parent" is seeking to regain custody from an Indian custodian. Because this case does not involve a foster-care placement, the Indian child I.E. cannot be the subject of a child custody proceeding as defined in the ICWA. Therefore, the ICWA does not apply.

## II

■ Appellant also argues that the tribal court has exclusive jurisdiction and is not subject to Minnesota's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Minn.Stat. § 518D.101–317 (2002). Therefore, appellant contends that the tribal court's *ex parte* order declaring the tribal court's exclusive jurisdiction is entitled to full faith and credit. Appellant relies on section 1911 of the ICWA, which requires Minnesota courts to give full faith and credit to the tribal court's custody order "to the same extent that such entities give full faith and credit to the ... judicial proceedings of any other entity." 25 U.S.C. § 1911. Because the ICWA does not apply, however, the UCCJEA governs the current proceedings.

The UCCJEA instructs Minnesota courts to "treat a tribe as if it were a state of the United States for the purpose of applying sections 518D.101 to 518D.210," which deal with interstate child custody determinations or disputes. Minn.Stat. § 518D.104(b). Under certain circumstances, the UCCJEA grants jurisdiction to a Minnesota state court to make an initial child custody determination. Minn. Stat. § 518D.201(a) (2002). A tribal court may also make a child custody determination under the UCCJEA. Minn.Stat. § 518D.104(c). However, the tribal court did not do that here.

In this case, the district court made an initial custody determination in July 2001 and granted sole legal and physical custody to appellant. At that time, Minnesota had jurisdiction to make an initial child custody determination under Minn.Stat. § 518D.201, and appellant did not dispute the state district court's jurisdiction. Under Minn.Stat. § 518D.202, the state district court had exclusive, continuing jurisdiction over its initial custody determination.

Appellant incorrectly relies on *In re Custody of K.K.S.,* 508 N.W.2d 813 (Minn. App.1993), for the proposition that the district court should decline jurisdiction, if it determines that it is an inconvenient forum and the tribal court is a more appropriate forum. In *K.K.S.,* the minor child had lived on the reservation with her Indian mother for three years when her father, a non-Indian, took the child from the reser-

vation without the mother's consent. *Id.* at 814. The father sought temporary custody in state district court, alleging child endangerment. *Id.* After the tribal court asserted jurisdiction, the district court declined jurisdiction. *Id.* at 815. This court held that, because the child was born on the reservation, the controversy arose on the reservation, the child lived on the reservation, the father removed the child from the reservation without permission, and the father admitted that he fled the tribal court's jurisdiction, the district court had concurrent jurisdiction with the tribal court and did not err in dismissing the case when the tribal court exercised its jurisdiction. *Id.* at 815–16.

*K.K.S.* thus involved an initial custody determination and a father who admittedly fled the tribal court's jurisdiction, and this court did not want to encourage "kidnapping" by exercising jurisdiction. *Id.* Here, however, the district court already had jurisdiction based on the initial custody ruling, which appellant never challenged. Because the current modification is a continuation of the initial custody ruling and all parties initially subjected themselves to the district court's original jurisdiction, we conclude that the district court properly exercised continuing, exclusive jurisdiction under the UCCJEA.

### III

 Appellant finally argues that I.E.'s biological Indian mother is an indispensable party who must be joined in this action. The district court did not address this issue, although appellant raised it in her memorandum in support of her motion to dismiss.

Minn.Stat. § 518.156, subd. 2 (2002), states that "[w]ritten notice of a child custody ... proceeding shall be given to the child's parent, guardian, and custodian." Here, the mother has no parenting or cus-todial rights as a result of the initial CHIPS proceeding, which removed the child from her mother's home because of the mother's mental illness and possible traumatic brain injury and granted permanent sole legal and physical custody to appellant. Accordingly, the mother is not an indispensable party.

### DECISION

The district court properly determined that the ICWA does not apply and that it had continuing, exclusive jurisdiction under the UCCJEA. Additionally, the biological mother is not an indispensable party to the proceedings.

**Affirmed.**